Council. Good morning, Your Honors. May it please the Court, I'm Noah Axler for Plaintiff Appellant Nancy Livi. I'd like to reserve four minutes for rebuttal if I may. Granted. Thank you. The District Court made a series of errors and its decision rests on two legally indefensible grounds. The first is that according to the District Court, the Pennsylvania Minimum Wage Act, the PMWA, can and in fact should be read inconsistently among its sections. Specifically, the PMWA's tip credit section refers to amounts added to a bill by management, like the service charges in this case, as gratuities. Nevertheless, the District Court found that when applying the PMWA in other contexts outside of the tip credit section, that service charges need not be regarded as gratuities. This inconsistent reading of the plain language of the statute, an inconsistent application of a defined term in the statute, is directly contrary to basic principles of statutory construction. Will you want this panel to determine that what Ms. Livi and her colleagues receive and what they believe in the way of amount they ought to receive is a gratuity, right? With respect to the service charges at issue, yes, Your Honor. What is gratuitous about an amount that two other parties have contractually bound one to pay to the other? How is that gratuitous in any way? Well, the definition of gratuity under the PMWA, which is contained in that tip credit section, the definition section contains the tip credit provision as well as the definition of gratuity. So it's clear that, for purposes at least of the tip credit section, that the PMWA intended to treat amounts added to a bill, in fact automatically by management, as a gratuity. And in fact, defendants concede in their brief that, for instance, when a restaurant adds an automatic gratuity for a large party, as I think we're probably all familiar with. They're just taking the word gratuity, put that in that when they do the emergency charge. So when the restaurant adds a gratuity, we're trying to figure out why it is a gratuity. Yes, so when a restaurant, yes, Your Honor, when a restaurant adds a service charge automatically to a bill, say for a large party, as I think we're all familiar with, defendants concede that under the tip credit section, at least, that is a gratuity. In other words, a voluntary payment. There's no other reasonable way of using the tip credit section, except as referring to an amount automatically added to a bill by management as a gratuity. You know that 20% to 21%, how is that determined? The amount of the commission charge, whatever it is here, that seems to be, at least in these cases, it's always 20% to 21%. Where'd that number come from? It's a number set by the hotel defendants or subject to ultimately an agreement between the hotel defendants and the other contracting party. That is a more accurate statement, Your Honor. It's a matter of contractual agreement and presumably negotiation between the parties. Now, the servers are not part of the negotiation, correct? The servers are not part of the negotiation. They play no role in sales whatsoever. But if it's negotiation, why is it always the same number? Well, Your Honor, I don't think there's, there's not a lot of evidence in the record on that because defendants resisted discovery of the identities of their customers with one exception. There's a contract with Bristol-Myers Squibb. There's also a supplemental contract with Bristol-Myers Squibb for a banquet event, which was clearly negotiated by Bristol-Myers Squibb. And Bristol-Myers, in that supplemental agreement, specifically said the 21%, they did agree to the 21%, but they said it's a gratuity. That's the evidence we have here of what customers believe. But they labeled the service charge as a gratuity. I don't know what language appeared in the contract, but it was a service charge which they agreed was to be. The service charge is a function of a contractual agreement between the hotel and a third party who wishes the banquet services, right? Who wishes to use the banquet services. That's right, Your Honor. All right. So is there any separate agreement, collective bargaining agreement? Is there any policy? What is, any written document for that matter? Is there anything that you can point to that sets out Hyatt's practice of paying the banquet servers 15% as opposed to 20% or 21%? Well, prior to November of 2015, the contracts, the banquet contracts, didn't tell the customer that part of the service charge would be paid to the banquet server. Why should that matter? Why should that matter to anyone other than the customer? Well, but I think it's reflective, Your Honor, and there's deposition testimony from defendant's witnesses that they changed the contract to be more open with the customer about what was being done. They probably changed the contract in response to this litigation or in light of this litigation, but that still doesn't tell me why it ought to matter with respect to the interests of Ms. Livey and any potential class members. Well, that gets a bit into plaintiff appellant's claim of third-party beneficiary entitlement to these service charges. And under Pennsylvania law, Pennsylvania Supreme Court decision in Scarpitti, the Pennsylvania Supreme Court said, if the beneficiary, if the promisee under a contract believes that the benefit of that contract is going to a third party, that is enough to state a third-party beneficiary claim. And I'll add, Your Honor, that the district court didn't consider, although plaintiff appellant cited this decision to the district court, the Pennsylvania Commonwealth Court decision in Churchill Valley Country Club. In that decision, in the context of an unemployment compensation. Is that the same as Marchione? They're calling it Churchill Valley Country Club. Is that the same as Marchione? That's a separate case, Your Honor. The full title of the Churchill Valley Country Club is Unemployment Compensation Board of Review versus Churchill Valley Country Club. It's a Commonwealth Court of Pennsylvania decision. And in that decision. Do you have a cite for us? I do, Your Honor. It's 19 Pennsylvania Commonwealth 430-333-A2D-738. And in that decision, the Commonwealth Court, in the context of deciding an appeal on an unemployment compensation case, said that service charges of exactly the type at issue here, they were levied automatically by the country club on banquet events. And paid to servers, ultimately, at that country club, including the claimant in Churchill Valley. The Pennsylvania Commonwealth Court said that those service charges are gratuities. And in doing so, the court said the following, federal law seems to distinguish gratuities on the basis of the degree to which they are accounted for by the employer and alternatively on the difference between a service charge and a true tip. Though this methodology may be helpful in our deliberations, we need not consider it controlling under our act. And we find that it is not a precise statement of Pennsylvania law. The district court should have at least addressed this decision in Churchill Valley because it is the only Pennsylvania appellate guidance on the issue of whether service charges like those in this case are gratuities. What about your contention, if I recall correctly, that we should not be looking to a parallel provision in the FLSA with respect to commissions here? If we are being called upon to predict how the Pennsylvania Supreme Court would define commission, you have staked out that position, have you not? That we should not look to that parallel provision? That's correct, Your Honor. Why not? I mean, how do you distinguish the Pennsylvania case law that directs Pennsylvania courts to look to federal interpretations of the FLSA where statutes are parallel? That's correct, Your Honor. Pennsylvania does direct consulting the FLSA where the statutes are parallel, but also says where they're not parallel or sufficiently similar, the FLSA need not be consulted. And in this case, they are not sufficiently similar. The district court ignored... How so? What material differences are there between the two? Well, for one, the TIP credit language, the language in the TIP credit provision that I've been discussing, which refers to amounts added to a bill by management, gratuities added to a bill by management, isn't present in the FLSA's TIP credit section, number one. Number two, we also have the Churchill Valley case. Plaintiff's primary argument in this case is the TIP credit section of the PMWA should have been consulted by the district court in informing itself of whether the statutes were sufficiently similar. I mean, you've taken that position from the outset of your oral argument, but getting back to the potential parallelism here, is it your contention that the PMWA and the FLSA are not parallel? They have some parallels, Your Honor, but what the district court here did is take a regulation... What do you make of what I see as nearly identical language that both statutes use concerning commissions? How do you get around that? Let me tell you, Your Honor, I'll explain. Number one, I think we believe the district court should have looked at the entire statute because interpreting the commission argument or the commission, the meaning of the term commission as it did, necessarily impacts the treatment of service charges throughout the rest of the statute and gratuities, number one. Number two, the FLSA has a regulation which explicitly says service charges are not... Like the ones that issue in this case, are not to be regarded as gratuities. Doesn't say they're commissions, but says they're not gratuities. Pennsylvania has not adopted that regulation. The district court should have considered that fact in assessing whether the intent of the Pennsylvania legislature, which with respect to at least the commission definition... We mentioned the intent of the legislature. To what extent does the intent of the two contracting parties control the outcome of this? Whether or not the parties intended, not necessarily Hyatt, and maybe they had a different intent and didn't think this through that carefully. I can see a situation where somebody who was renting out a banquet or renting out a facility for a banquet didn't really care where the money went. They had to pay the 20% of the 21%, and they didn't care if it went as a tip to the banquet workers or to the hotel in total or in part, but it may well be that the person renting it assumed that, and maybe that's why the pop-and-pops up at Bristol-Myers Webb. They may have assumed that was going to be given to the banquet workers so that they didn't have to then worry separately as to whether or not they should do anything to compensate them. And what I'm getting at, I guess, is it's an awkward case for summary judgment where you've got a case that may be driven by contracting parties being resolved as a matter of law on an undeveloped factual record. I agree with that, Your Honor. I think the issue of what the intent of the contracting parties was comes into play if the court were to determine that it's not clear from the face of the PMWA, and we've Because then we get into the issues of third-party beneficiary status. Under the restatement, you've got a heavy lift there, though, don't you, as a third-party beneficiary, given the elements of that under the restatement of contracts? Well... And it also then goes back to the intent of the contracting parties and who they primarily intended to benefit from their contract. That's certainly an element, or perhaps the controlling element, under the Pennsylvania Supreme Court's precedent in Scarpitti, where the restatement second was adopted, and the Supreme Court said it's enough to state a claim for third-party beneficiary status if the promisee believed that the money was due to the third party. All the record evidence, we believe, says that the customers, although discovery was limited on that, that the customers of defendants believed that service charges were going to customers. Now, I'd just like to say, I realize I'm out of time, Your Honors, I'd just like to say that... And you have reserved four minutes. Thank you, Your Honor. I would just like to conclude and say, these are clearly issues of state law, and that's why we've asked that the question of whether service charges or gratuities under the PMWA be certified to the Pennsylvania Supreme Court. Thank you. Thank you. We'll have you back on rebuttal. Mr. Kinkle. Good morning, Your Honor. May it please the Court, I'm Noah Kinkle on behalf of Defendant Appellants led by Hyatt. There's four claims on appeal in this case, and most of the fire, fired by Livy on the District Court's decision, concerns the claim on the portions of the service charges that Hyatt retained. And this claim must fail for two reasons. First of all, as the District Court's decision made clear, what Livy's trying to do here is pull out a sentence from the tip credit provision of the Pennsylvania Minimum Wage Act and make it into a standalone tip protection statute. But that sentence has to be read in context. What we've got here is the tip credit, and what we're talking about with the tip credit is employers are allowed to pay tipped employees an amount below minimum wage with the idea that tips will make up for the balance, probably more so. In this case, Livy, for example, made $57,000 in her last full year of employment. There are some I's to dot and T's to cross in order for an employer to do that, and one condition is that where the gratuity is added to the charge made by the establishment, either by management or the customer, the gratuity is the property of the employee. That's the sentence on which Livy hinges her claim. It is in the tip credit claim. This is Section 333.103, right? Yes. D2. So, I mean, you're saying simply that this is an inapplicable provision to the kind of arrangement we have here. That's precisely it. I ask you the same question I asked to Mr. Axler. Is there any kind of a contract or collective bargaining agreement or some kind of document in this record that demonstrates or sets forth Hyatt's policy of paying banquet servers 15%? There is affidavit testimony, or deposition testimony, excuse me, setting forth what the policy is. There is no- Where does Hyatt come from? Is it the same whenever someone interacts with Hyatt? Hyatt has always paid its servers 15% of the, you know, the 15% service charge and retains the balance. Does that document characterize that 15% payment in any way? I do not, no, there's no document that, there's no internal document to Hyatt that does that. The only documents in play are the contracts with the customers. Are the banquet servers union members? And I only ask that because Posner in his Seventh Circuit opinion in the theory he comes up with to conjure up what legislative intent was. Yeah, they are. They are in the FLSA. He mentions do not union, and I'm wondering where is he getting that from? It's not on the record so far as I can tell.  They are, they are not represented by a, by a union. So these are not the normal, or the regular, I'll put it that way, hospital, Hyatt employees who might, if I go to Hyatt for a lunch, for example, the person who serves me at the table, the server, when I go that night, if I go to a banquet that some customer is sponsoring, I wouldn't see that same person there. That's a different set of, different universe of workers. This is a different, yeah, right. There are Hyatt employees who are in the restaurant. There are Hyatt employees in the banquet. Banquet servers are a different classification of employees at Hyatt. Okay. So why should we not certify this to the Pennsylvania Supreme Court given that it's all driven by Pennsylvania law? I think for a couple reasons. First of all, it is, I think it's clear. It wouldn't be if it was that clear. It wouldn't have gotten this far. Is that an existential observation? Yes, it is. And I can, and I can set forth why I believe it's clear, but, but that, that's the one reason, is that I don't think there's any, there are no conflicting decisions of state law on this that have addressed it. I do agree that neither this court nor the Pennsylvania Supreme Court have decided the issue, but I think that's- Has the mozzarella opinion come to your aid in any way with respect to whether or not we should certify? I'm sorry, Your Honor. I didn't catch what you said. Would the mozzarella, mazarella opinion, mazarella versus fast-break support, if I recall what we said, what we determined there was that we applied the technique in determining how the Pennsylvania Supreme Court would rule on PMWA exemptions. I'm wondering if that provides any sort of support to your position that we not certify. I think it does. And I think here, I think interpreting the Pennsylvania Minimum Wage Act, we look to the statute. And sometimes the statute, you know, sometimes we turn to the FLSA, sometimes we don't. For example- Are the PMWA and the FLSA parallel here? On this claim, yes. Sometimes yes, sometimes no. On this claim, yes. How? There are some places. How? Because they have the same tip credit provision. They have the same- Is it defined the same? Yes, it is. It is defined in regulations. The FLSA regulations, it's not in the statute, but it is in their regs, and those are legislative regs. They set forth a tip credit. One of the conditions is that the employee keeps all the tips, except for a valid tip pool, which is exactly what the Pennsylvania Minimum Wage Act provides for. It also provides a definition of a distinction between a gratuity and a service charge, with the gratuity being voluntary and up to the customer to recognize service how they want, with the service charge being mandatory and not qualifying as a tip under the tip credit statute. Let me ask you a question, Mr. Axler. To what extent does the outcome of this turn on the intent of the parties? Are you saying that the statute, the Pennsylvania statute, would control even if the two contracting parties intended this? No, not two contracting parties, one of them is here, but if the other contracting party, the customer, intended this to go to the employee as a tip, forget the percentage that the employee was getting, they intended it to go as a tip, would that matter? I don't believe it does. I think the intent of both parties is necessary to establish a third-party beneficiary claim. I'm not talking third-party beneficiary. I'm just talking about whether or not the commission slash tip, whatever it is called the fee of the charge, was intended by the customer. Maybe there was not the quote proverbial meeting of the minds here. They intended that tip to go to that, I'm doing it now, that amount of money to go to the banquet service. I don't believe for purposes of the retention of tip claim under the Pennsylvania Minimum Wage Act or the overtime claim that the intent of the customer matters. What matters is what happened under the contract, which was that ahead of time, Hyatt sets forth a condition for the banquet that there's going to be a 20 and then 21 percent service charge and each customer pays it. The 20-21 percent, is that the same for all of Hyatt's customers? It's always 20-21 percent? It always is. It changed at one point, I can't remember the year, they raised it. But every contract in the record sets forth either 20 up to a certain point in time and then 21 thereafter. There's never been any variance from that. We know from you, we know from counsel, that the plaintiff and the putative class are not members of a union, that this is not a collective bargaining situation. But are employees, banquet employees, servers, in any way involved in the negotiation and entry into the contractual relationship between Hyatt and the party seeking banquet services? No. They are not involved in that. They have no seat at the table, no role at all in that? They do not. And did they have any role in that 20-21 percent, defining what that number was going to be, if you know? They didn't. No. That is set by Hyatt management and the sales staff with its customers. And Hyatt determines what percentage will be given to the servers? Yes, it has. Yes. And it's consistently 15 percent? It has always been 15 percent, yes. Even when it was 20 percent, it was still 15 percent? Correct. Correct. If it's a commission, what is it a commission for? It is a function, it's a percentage of food, beverage, and room rental. Would you concede that if it's a commission, it is not a commission in any garden variety sense that most of us would think of a commission? It is a percentage of the sale, so it is a commission to that extent. And the sale is being made by Hyatt to a third party? Correct. Correct. And what the servers are doing here is, having had no role whatsoever in this contractor's negotiations, they're offering labor effectively? That's correct, Your Honor. The servers do not have a sales function. They are not getting, they're not receiving any service charges because they made a sale. So, to the extent a commission is defined that way, they do not have that. That, however, is not how this exception to the FLSA, or the Pennsylvania Moving Wage Act, for that matter, has been interpreted. It's broader than just making a sale. The Seventh Circuit recognizes that in the Meck-Meck v. Four Seasons case, and all the other cases have been the same. I'm not all that overwhelmed by the reasoning, and I haven't discussed it with my colleagues. The reasoning there just seems to be spun out of whole, off a conjuring of congressional intent based upon what the author of the panel thought must, the economic forces. I mean, it's driven by economic determinism, and no disrespecting the story to the author in charge, but that's the way he crafts his opinions, and that's the way he thinks. And it's not really pinned to the records. I'm just not sure that that opinion is all that helpful to us. Okay, well, it has been followed by all other district courts. There are no other courts going the other way on this issue. There's nothing else out there other than Meck-Meck, is that right? I'm sorry? There's nothing else out there. There is. Yes. On that point, there is. That is a 1987 case. It's a 1987 case. There are some other district court decisions since then. There's also a Department of Labor opinion letter that, and adopted by the Seventh Circuit, and found to be commissioned for purposes of the Section 7i exception, where auto mechanics, auto repair people, also are paid by a percentage of the sale. They are not involved in making sales to customers of how you want to repair your vehicle, but they are paid that way as well, and are considered Section 7i exempt by the Department of Labor, even I think both before and after Meck-Meck, and opinion letters by the DOL. So this is the decision of the Department of Labor as well. It's not just the Seventh Circuit. And there are no conflicting decisions out there as well, which is another reason why we don't believe this needs to be certified to the Pennsylvania Supreme Court. And as well, it wouldn't, in our view, dispose of the entire case. It only involves really half of one claim here, because even if these are characterized as gratuities, still there's no credit taken here, and that's undisputed. So we never even necessarily have to reach that question, though we contend that if we do reach that question, these are not voluntary. If it's in the record, do you know what extent the Hyatt number is the industry number? If somebody was to go to, I don't know who and to anymore, but let's say Marriott or Four Seasons to negotiate a contract, would that also be 20 or 21 percent, if it's in the record? It's not in the record. I have my own view on that, but it's not in the record. Okay. The bankless owners are not allowed to collect tips of the functions, are they? They are not. They are not. The, you know, the other thing I want to bring up, there is a definition of gratuities in this statute. It is, there's an explicit definition. It's not the one in the tip credit provision. It's elsewhere in the statute. It follows in the same definitional section, and gratuities are defined as voluntary.  But that's not helpful, though, because it was mentioned by Mr. Axler. We've all encountered situations where we've gone with a number of folks to a restaurant and right at the bottom of the bill it says for a party of X or more, a percentage will be added as a, quote, gratuity, and I would imagine if I tried to suggest to the server at that restaurant, or the manager who would come out soon after, the servicer, call them out, that I, you know, this is kind of voluntary, and I'm not going to pay it, I'm only going to give you X dollars, I'm not giving you X plus your 20 percent, even though 15 of us have ordered at this table, I'd probably be in some trouble. I don't know that, Your Honor, but what I can tell you is... I'm suggesting it's not really voluntary. No, no, this, well, that may not be voluntary, but I can also tell you that... I have to presume it, since it is not under attack, is the entry of two parties into a contract. Yes. And so, to that extent, there was a voluntary action, which included approval of the commission service charge, whatever it was, pursuant to this contract. It seems to me that the definition of gratuities in the contract, which you correctly suggest, or correctly point to, is not exactly a model of clarity in the way it is drafted. Gratuities mean voluntary, monetary contributions received by an employee, from a guest, patron, or customer, for services rendered. It was not a contribution voluntarily made, it was a contractual obligation, so whether or not this definition fits the circumstances here, in my view, in any event, remains to be seen. But, unless my colleagues have any further questions, I'll thank you very much, Mr. Finkel, and ask Mr. Axler to return for rebuttal. Thank you, Your Honors. First point I'd like to make is banquet servers here, as I think has been evident from the argument today, banquet servers at dependents' hotels perform the same functions as their colleagues in restaurants perform. So it makes little sense to say... Now, wait a minute, wait a minute. They're not banquets I've gone to. They hand out menus? They take specific orders? Well, what I meant, Your Honor, is that they serve food, they serve drink, perhaps even have less of a sales function than servers outside of hotels. But it makes little sense to say that their commissioned employees, when they perform largely the same duties as their colleagues in the restaurant industry. I'd also like to say, with respect to the Mehmet decision, which the district court relied on almost entirely in making its holding, I agree with Judge McKee for all the reasons he stated that that case should not be applied here. But there's another important distinction about Mehmet, which is that the plaintiffs in that case conceded that the service charges at issue were not gratuities. The issue there was whether they were something other than commissions. That's a very important distinction, because that's obviously not the case here, and there's no evidence in Mehmet that there was anything in the Illinois wage law that would have supported their argument, as there is here for plaintiff appellant. To just clarify what probably is obvious, Mr. Finkel, during his presentation a few minutes ago, began to reference third-party beneficiary status. As I recall, you have at no point relied upon a third-party beneficiary theory. I don't recall seeing it in your brief, is that correct? I recall you invoking unjust enrichment at some point, but I don't recall third-party beneficiary status. We do have a third-party beneficiary claim, Your Honor, under our WPCL claim. That claim rests on two grounds. Number one, if there's a violation of the PMWA, there is case law saying that a violation of the PMWA can constitute a violation. Where is, just point me to that, please, in your brief, because if I have completely forgotten that, I need to go back and get a look at it. We discussed the third-party beneficiary theory. Well, is it, under the argument portion of your brief, is it set out as an issue anywhere? It is, Your Honor. And that's at page 41 of our initial brief in the context of discussing the WPCL. And as I said, our theory under the third-party beneficiary prong is that in the event that the court should decide that the service charges are something other than gratuities, perhaps straight wages, the third-party beneficiary theory explains why banquet servers would still be entitled to the entirety of the service charge. Mr. Finkle is arguing that if he's right about the state law applying to these charges, and if he's right in response to my question about the intent of the contracting parties, the same thing would carry over to your clients as a third-party benefit of that promise. If I understand you, Your Honor, then it would be, and I wanted to address this, you've asked several times about the intent of the contracting parties. That is absolutely relevant to the third-party beneficiary claim. Not if it's trumped by a statute which controls how that money is to be appropriated. As I understand, that's Mr. Finkle's argument. When I asked him, what if the contracting parties intended, at least one of the contracting his response is, I understand, he'll, I guess, but he can't let me know if they're wrong. I don't think I am wrong, is that, well, given the way the state statute is drafted, that doesn't really matter. It seems to me as a matter of life, you're right, that the state statute would become part of the contract. Does that make sense, what I'm asking? It does. We have not argued that specifically. I can tell you that, Your Honor. But other states, New York, for instance, perhaps being the primary example, have passed legislation saying that there's a rebuttable presumption that these service charges are gratuities after there were a lot of cases in New York where the issue of the intent of the parties came up. And the New York legislature apparently concluded the default assumption for a customer is that a service charge is a gratuity because it stands in for a gratuity like it does here. Does that address your question to some degree, Your Honor? Yeah, it was a big question. The answer is more precise than the question was. I'm not sure it addresses it, but I'm satisfied by your response, if that makes any sense to you. It does, Your Honor. I'd rather be more specific than less. I see I'm out of time. Thank you, Your Honor. Thank you very much. Thank you to both the counsel. We'll take the case under advisement.